UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**GILLIS GROCERY & CAFE**          **CASE NO. 2:22-CV-04481**

**VERSUS**                          **JUDGE JAMES D. CAIN, JR.**

**WESTERN WORLD INSURANCE CO**     **MAGISTRATE JUDGE DAVID J. AYO**

**MEMORANDUM RULING**

Before the court is a Motion for Summary Judgment [doc. 18] filed by defendant Western World Insurance Company ("WWIC"). Plaintiff Gillis Grocery & Café ("Gillis") opposes the motion. Doc. 18.

**I.**
**BACKGROUND**

This suit arises from alleged Hurricane Laura and Hurricane Delta damage to a meat market and grocery store owned by Gillis in Lake Charles, Louisiana. Doc. 1. At all relevant times the properties were insured under a policy issued by WWIC. Gillis asserts that WWIC failed to timely or adequately compensate it for its covered losses after the hurricane. Accordingly, it filed suit in this court on August 25, 2022, raising claims of breach of contract and bad faith under Louisiana law. Doc. 1. The matter is set for jury trial before the undersigned on June 24, 2024.

WWIC now brings this motion for summary judgment, seeking dismissal of Gillis's claim for additional business income coverage and related claim for bad faith. Gillis

opposes the motion, arguing that WWIC is intentionally misinterpreting its own policy and thereby in bad faith. Doc. 21.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material

fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). Louisiana law provides that an insurance policy is a contract and that its provisions are construed using the general rules of contract interpretation in the Louisiana Civil Code. *Hanover Ins. Co. v. Superior Labor Svcs., Inc.*, 179 F.Supp.3d 656, 675 (E.D. La. 2016). "When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and the courts must enforce the contract as written." *Sims v. Mulhearn Funeral Home, Inc.*, 956 So.2d 583, 589 (La. 2007) (citing La. Civ. Code art. 2046).

As to Business Income ("BI") coverage, the WWIC policy provides:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to property at the premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. . . .

Doc. 18, att. 3, p. 69. The limit for BI/Extra Expense coverage is $150,000.00 for Premises 1, Building 1 (the grocery store) and $50,000.00 for Premises 2, Building 1 (the meat market). *Id.* at 50. Both are subject to a coinsurance of 80 percent. *Id.*

The policy also provides additional coverage under the BI limit for civil authority loss, with the following provision:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of damage, and the described premises are within that area but are not more than one mile from the damaged property, and
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.
> Civil Authority Coverage for Business Income will begin 72 hours after the time of the first action of civil authority that prohibits access to the described premises are located.

*Id.* at 70.

Among the policy's general exclusions, the policy also provides:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
> . . . .
> e. Utility Services
> The failure of power, communication, water or other utility service supplied to the premises, however caused, if the failure:
> (1) originates away from the described premises; or
> (2) originates at the described premises, but only if such failure involves the equipment used to supply the utility service to the described premises from a source away from the described premises.

*Id.* at 82.

WWIC retained Parker Loss Consultants ("Parker Loss") to adjust Gillis's Hurricane Laura claim. Kirk Gresham with Parker Loss inspected the properties on

September 4, 2020, and noted in his report: "The insured is aware these losses will be handed in house by the carrier. And the insured will be asked to provide profit and loss statements as needed." Doc. 18, att. 6, p. 4. In March 2022 Gillis provided WWIC with documentation of its BI claim. WWIC then prepared an estimate, determining a BI loss of $95,412.00 for the grocery store and $3,822.00 to the meat market after application of the coinsurance. Doc. 18, att. 8. WWIC issued payment based on this estimate on March 23, 2022. Doc. 18, att. 9.

Gillis filed suit in August 2022, claiming additional sums owed for its hurricane losses. Doc. 1. On March 26, 2024, it presented a supplemental proof of loss claiming additional sums under its BI coverage. Doc. 21, pp. 8–9. WWIC has made no payment based on this submission. Additionally, it now claims that Gillis is not entitled to any additional sums because the Civil Authority extension does not apply.

As WWIC admits, a mandatory evacuation order was in effect for Hurricane Laura. It argues, however, that this order was insufficient to trigger Civil Authority coverage because (1) it was not tied to any existing physical damage at the time it was issued, two days before Laura made landfall, and (2) it did not prevent plaintiff or anyone else from entering the area and accessing their property. WWIC relies on the Fifth Circuit's decision in *Dickie Brennan & Co., Inc. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011), a Hurricane Gustav case in which the court found that the insured restaurant failed to demonstrate a nexus between the mandatory evacuation order and any physical damage. Hurricane Gustav, however, caused "only minor damage" to New Orleans and neither

plaintiff nor its neighbors suffered any property damage as a result of the storm. 636 F.3d at 684.

Hurricane Laura, on the other hand, took a direct path over Lake Charles. The storm left widespread devastation, including along roadways throughout Calcasieu Parish and certainly within one mile of the insured property. The mandatory evacuation order was issued in anticipation of such destruction. It remained in effect to allow emergency crews time to work unimpeded once the damage was realized. Although the order did not bar access to property, it did impose terms such as curfews and closure of non-essential businesses[1] severely hindering any commercial operations. The court has already determined that the terms of these orders acted as prohibitions and are sufficient to trigger civil authority coverage. *See Pathology Lab. Inc. v. Mt. Hawley Ins. Co.*, 552 F.Supp.3d 617, 625–28 (W.D. La. 2021). Accordingly, WWIC cannot categorically refuse further coverage on this basis. Additionally, a supplemental proof of loss has been submitted and not paid for more than 30 days. WWIC fails to show that no reasonable jury could second-guess its decision. Summary judgment must also be denied as to the bad faith claim.

---

[1] WWIC argues that the business closure order could not encompass Gillis. A grocery store would likely qualify as an essential business, but it is unclear that a meat market would. Additionally, as Gillis admits, the grocery remained closed until July 2021 due to direct physical damage. Doc. 21.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 18] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 14th day of May, 2024.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE